UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN GIANACOPOULOS, | |
| Plaintiff, | CIVIL ACTION NO. 3:23-CV-992 |
| v. | (SAPORITO, J.) |
| JOYCE JACKMAN & BELL, LLC, d/b/a JOYCE JACKMAN & BELL INSURORS, et al., | |
| Defendant. | |

## MEMORANDUM

On May 19, 2023, the plaintiff John Gianacopoulos filed this action

against defendants Acuity, a Mutual Insurance Company ("Acuity") and

Joyce Jackman & Bell, LLC ("JJB")[1] concerning a fire that occurred on

September 12, 2022, at 1124 Saint Ann Street in Scranton, Pennsylvania

(the "Scranton Property"). On June 16, 2023, Acuity removed this action

to the United States District Court for the Middle District of

Pennsylvania based on diversity jurisdiction. (Doc. 1). Since that

---

[1] In its earlier filings in this case, defendant Joyce, Jackman & Bell LLC ("JJB") averred that it was improperly designated as JJB and that its correct name is RSC Insurance Brokerage, Inc. The parties have not formally moved to amend the name of JJB under Rule 15(c) of the Federal Rules of Civil Procedure. Thus, we will continue to refer to JJB as a party defendant in this action.

removal, Acuity has been dismissed as a party in this case. (Doc. 62). The plaintiff's sole remaining claim is a negligence claim against JJB. Now before the Court is JJB's motion for summary judgment. (Doc. 37). The parties have briefed the motion (Doc. 38; Doc. 39; Doc. 40; Doc. 41; Doc. 42; Doc. 46; Doc. 49; Doc. 64) and the matter is now ripe for review.

## I.    Background[2]

At the time of the underlying events starting in September 2022, the plaintiff owned two properties: (1) the Scranton Property, located at 1124 Saint Ann Street in Scranton, Pennsylvania; and (2) the Dunmore Property, located at 506 North Blakely Street in Dunmore, Pennsylvania (the "Dunmore Property").

The plaintiff originally purchased the Scranton Property in 1998, and in 2015, he enlisted JJB to help him obtain a homeowner's policy for that property. The plaintiff subsequently obtained a policy from Acuity with a "resident premises" requirement, mandating that the plaintiff occupy the property as his primary residence as a condition of coverage. In February 2021, the plaintiff purchased the Dunmore Property. The

---

[2] The facts are taken from both Acuity's "Undisputed Statement of Material Facts" (Doc. 38) and JJB's "Statement of Facts" (Doc. 42) and admitted by the plaintiff. (Doc. 64).

plaintiff again enlisted the help of JJB to obtain coverage and purchase insurance for that property. The plaintiff obtained a homeowner's insurance policy underwritten by AmGuard Insurance Company with a "resident premises" requirement. While the plaintiff had moved from the Scranton Property to the Dunmore Property by September 2022, the plaintiff still held his insurance policy with Acuity for the Scranton Property. Thus, the plaintiff maintained two separate policies on two different properties, each of which required that he use that property as his primary residence.

On September 12, 2022, a fire occurred at the plaintiff's Scranton Property. The plaintiff subsequently filed a claim under his insurance policy with Acuity. In response, Acuity investigated the plaintiff's claim. During that investigation, however, Acuity discovered that the plaintiff was no longer using the Scranton Property as his primary residence despite the policy having a "resident premises" requirement for coverage. Instead, Acuity found that the plaintiff had been living at his Dunmore Property and had been renting out the second floor of the Scranton Property to an individual named Thomas Foley. Moreover, the plaintiff had been using the first floor of the property for commercial purposes,

such as for his architecture business. Therefore, Acuity denied the plaintiff's claim because the plaintiff's coverage was predicated on the usage of the Scranton Property as his primary residence.

The plaintiff has brought this action against JJB for a claim of negligence, arguing that JJB knew, or should have known, that the plaintiff's homeowner's insurance provided by JJB concerning the Dunmore Property rendered his insurance policy covering the Scranton Property effectively void. The plaintiff's contention is predicated on JJB's awareness that the plaintiff intended to make his Dunmore Property, rather than his Scranton Property, his primary residence, and that JJB owed a duty to the plaintiff to discuss the consequences of the competing coverages. JJB contends that it had no knowledge that the plaintiff intended to switch his primary residence from the Scranton Property to the Dunmore Property, and even if so, it had no duty to warn the plaintiff about his allegedly defective coverage for the Scranton Property.

## II.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only

once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### III. Discussion

Before analyzing the case on its merits, we must first clarify the

issue before the Court. To do so, we must recount some important facts from the record. At the time of the fire occurring at the Scranton Property, the plaintiff held a homeowner's insurance policy with Acuity for that property which required that he use the property as a "resident premises." The plaintiff, however, failed to abide by his policy's terms as he was using his Dunmore Property as his "resident premises" rather than his Scranton Property. Acuity therefore denied the plaintiff's claim because the plaintiff violated those terms.

The plaintiff argues that JJB helped the plaintiff "procure a policy for the Dunmore Property which voided his insurance policy for the [Scranton Property]." (Doc. 46-2, at 8). Specifically, he states that "JJB obtained [for] him two policies for ... two properties, both of which required that the property be Plaintiff's primary residence ... which could not be in effect at the same time." (*Id.*). But we must note that the plaintiff's claim for fire damage was not denied by Acuity because the plaintiff held a second policy for his Dunmore Property. Acuity denied the claim because the plaintiff failed to use his Scranton Property as his primary residence in violation of the policy's terms. Accordingly, this action rests on JJB's alleged failure to advise the plaintiff that his move

required updated coverage for the Scranton Property, rather than on any failure to assist the plaintiff in procuring coverage for the Dunmore Property. Thus, both this motion and the action as a whole turn on the scope of the professional duty, if any, which JJB owed the plaintiff as an insurance broker and whether that duty encompassed the plaintiff's particular circumstances. We must therefore analyze the scope of professional duty which an insurance broker owes its insured in the acquisition of insurance for improved real estate.

To prevail on a claim for negligence, a plaintiff must establish that: (1) the defendant owed a duty of care to the injured party; (2) the defendant breached that duty; (3) the injured party suffered actual harm; and (4) a causal relationship exists between the breach of duty and that harm. *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019). Pertinent to this case, "[a] licensed insurance agent … [i]s required to exercise the skill and knowledge normally possessed by members of that profession and his failure to do so render[s] him liable for any loss of coverage." *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1138 (Pa. Super. 2003). Pennsylvania courts have often stressed that "the insured has both the capacity and the duty to inquire about the scope of insurance coverage,

rather than rely on 'hand holding and substituted judgment.'" *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571, 579 n.6 (Pa. Super. 2006); *see Kilmore v. Erie Ins. Co.*, 595 A.2d 623, 626 (Pa. Super. 1991), *appeal denied*, 604 A.2d 1030 (Pa. 1992). An insurance broker is simply "a middle man between the insured and the insurance company." *Allegrino v. Conway E & S, Inc.*, No. CIV.A. 09-1507, 2010 WL 3943939, at *7 (W.D. Pa. Oct. 6, 2010) (citations omitted). Accordingly, "a broker's relationship with the insured is ordinarily an arm's length transaction, rather than one which is inherently marked by extreme dependence and trust." *Wisniski*, A906 A.2d at 579 n.6.

"Once the insurance contract takes effect … the insured must take responsibility for his policy." *Treski v. Kemper Nat. Ins. Companies*, 674 A.2d 1106, 1114 (Pa. Super. 1996) (citations omitted). In turn, a broker does not have a duty to an insured to "provide ongoing advice concerning the limits of its coverage." *Id.* For this reason, courts have found that professional negligence causes of action against insurance agents or brokers arise only in limited circumstances: (1) where the broker fails to procure the requested insurance coverage; (2) where the broker does not follow the client's instructions; or (3) where the policy is void or materially

defective through the broker's fault. *Laventhol & Horwath v. Dependable Ins. Assoc. Inc.*, 579 A.2d 388, 391 (Pa. Super. 1990).

Here, the plaintiff's purchase of coverage for the Scranton Property and the plaintiff's subsequent purchase of coverage for his Dunmore property would typically be viewed in isolation to the "arm's length transaction" between the parties. *Wisniski*, 906 A.2d at 579 n.6. Therefore, JJB would have no duty to monitor the plaintiff's coverage or provide ongoing advice to the plaintiff concerning the policy for the Scranton Property once the policy took effect. *See Treski*, 674 A.2d at 1114. It would be the plaintiff's duty, rather than JJB's, to "inquire about the scope of insurance coverage" as pertaining to both his properties. *Wisniski*, 906 A.2d at 579 n.6. But we reiterate that JJB still had a duty to the plaintiff "to exercise care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances." *Al's Café, Inc. v. Sanders Ins. Agency*, 820 A.2d 745, 750 (Pa. Super. 2003) (quoting *Consol. Sun Ray, Inc. v. Lea*, 401 F.2d 650, 656 (3d Cir. 1968)). Accordingly, if the plaintiff conveyed to JJB that he necessitated a change in coverage concerning his Scranton Property in conjunction with his inquiry for coverage for his Dunmore Property, rather than purchasing

coverage for the Dunmore Property in isolation, we find that a reasonable factfinder could determine that JJB owed a duty to the plaintiff to discuss those coverage options. Our review of the record indicates that there remains a genuine dispute of material fact as to this issue, thereby preventing summary judgment.

First, it remains unclear whether JJB knew that the plaintiff was changing his primary residence from the Scranton Property to the Dunmore Property, and, if so, whether that knowledge was sufficient to put JJB on notice that the plaintiff needed to obtain new coverage. JJB contends that it had no reason to know the plaintiff had changed his residential premises, citing record evidence that the plaintiff admitted he never informed JJB that the property was being used for commercial purposes or that he no longer resided there. (Doc. 41, at 7–8). Moreover, JJB notes that two Acuity representatives confirmed that the plaintiff never directly advised them that he was "using the Scranton Property for his business, no longer living there, or renting it out." (*Id.*, at 8). In response, the plaintiff notes that his Acuity policy listed his address as the Dunmore Property, (Doc. 46-5), and that documents concerning coverage for his Dunmore Property list his residence premises as the

Dunmore Property. (Doc. 46-6). The plaintiff also points to an email addressed to JJB where he explicitly informed JJB that his mailing address is the Dunmore Property. (Doc. 46-7). The parties' contentions therefore create a genuine dispute of material fact as to JJB's knowledge of the plaintiff's changed residency. The extent of JJB's knowledge, however, is a question better left for the jury rather than the Court.

Moreover, there remains a factual issue as to whether JJB owed the plaintiff a duty to advise him of potential coverage conflicts between the Scranton and Dunmore properties, even if JJB was aware of the plaintiff's change in residency. The plaintiff contends that once JJB became aware of the change in the plaintiff's residence, it had a duty to advise him that coverage for the Scranton Property needed to be modified to remove the residency requirement. The plaintiff's argument relies on an expert report and testimony from its witness James Stevenson, an underwriter, consultant, and broker with over thirty-years of experience in the insurance field. Based on the evidence provided to him, Mr. Stevenson concluded that JJB breached its professional duty of care by failing to procure the "correct policy for John Gianacopoulos," by failing to "explain the differences in coverages between a homeowners' insurance

policy … versus a dwelling fire insurance policy." (Doc. 37-7, at 5).

JJB has moved to exclude Mr. Stevenson's expert report and testimony, arguing that they are inadmissible because it lacks the requisite reliability and application to the specific facts of this case in violation of Rule 702 of the Federal Rules of Evidence. (Doc. 41, at 10); *See* Fed. R. Evid. 702 (explaining that a witness who is qualified as an expert may testify in the form of an opinion if "the testimony is based on sufficient facts or data" and "the testimony is the product of reliable principles and methods."). Viewing the record in the light most favorable to the plaintiff, however, we find that Mr. Stevenson has satisfied both contested prongs of Rule 702. Mr. Stevenson's opinion is supported by his "education, training, experience and expertise in the property and liability insurance industry over the past [thirty-seven] years," (Doc. 37-7, at 5), and moreover, his opinion concerns facts pertinent to this case. He has stated in his report that JJB should have been aware of the plaintiff's changed residence and "[o]nce [JJB] was made aware that John Gianacopoulos had purchased a new home and was making it his residence, [JJB] was or should have been aware that the [Scranton Property] was no longer [his] residence." (*Id.*, at 3). He further opined

that JJB breached its duty by failing to procure the correct policy for the plaintiff's Scranton Property, a dwelling fire insurance policy, that would have provided property coverage for the fire loss at the property. (*Id.*, at 4–5).  Moreover, Mr. Stevenson further explained in his deposition that "it's up to the agent, being the trained expert they are in the insurance industry, to recommend or explain the coverages available and the policies available to the insured/prospect" (Doc. 37-8, at 7), and that JJB had an obligation to advise the plaintiff in this action because "[y]ou can't have two homeowners' policies with primary residences." (*Id.*, at 15); *see also* (*Id.*, at 17) ("Again, it goes back to that – on the application, you can't have two, you know, primary residences on there."). Accordingly, Mr. Stevenson's expert opinion is relevant to this case and may assist the trier of fact. *Kenney v. Watts Regul. Co.*, 512 F. Supp. 3d 565, 579 (E.D. Pa. 2021) ("The expert's testimony must be relevant for the purpose of the case and must assist the trier of fact. Our Court of Appeals instructs [that] the Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact under 401 generally, and Rule 702 has a liberal policy of admissibility.") (quotations and citations omitted). Mr. Stevenson's opinion as expressed in his report and at his

deposition creates a genuine dispute of material fact as to the duty that JJB owed the plaintiff which must be determined by a factfinder rather than the Court.[3]

## IV.    Conclusion

For the foregoing reasons, JJB's motion for summary judgment will be denied.

An appropriate order follows.


Dated: February 13, 2026              *s/Joseph F. Saporito, Jr.*
                                       JOSEPH F. SAPORITO, JR.
                                       United States District Judge

---

[3] At this stage, and based upon the record before us, we find that Mr. Stevenson's expert report (Doc. 37-7) and testimony (Doc. 37-8) satisfy the requirements of Rule 702 of the Federal Rules of Evidence. Our finding does not, however, preclude either party from requesting a *Daubert* hearing or filing a motion *in limine* to challenge the reliability or define the permissible scope of any expert report or testimony.